# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

JULIE A, SU, Acting Secretary of Labor,
U.S. Department of Labor,

      Plaintiff,

      v.                       Case No.: 8:24-02345-PX

LIFELINE, INC, and
RHODA MAKINDE, an individual,

      Defendants.

---

## DEFENDANTS' ANSWER TO PLAINTIFF'S AMENDED COMPLAINT

Defendants, through their undersigned attorneys, hereby file their answer to Plaintiff's Amended Complaint. Paragraph references are to the Amended Complaint.

1. Jurisdiction of this action is conferred upon the Court by Section 17 of the FLSA, 29 U.S.C. § 217, and by 28 U.S.C. §§ 1331 and 1345.

Paragraph 1: Admitted.

2. Defendant Lifeline, Inc. is a corporation organized under the laws of the District of Columbia and having its principal office and place of business located at 5632 Annapolis Road, Suite 6, Bladensburg, Maryland. Lifeline is in the business of providing home care services and operates out of the aforementioned location and 1615 Kenilworth Avenue NE, Washington, DC 20019.

Paragraph 2: Admitted.

3. Defendant Rhoda Makinde ("Makinde") is the owner, operator, and manager of Lifeline. Makinde is a shareholder of Lifeline and controls day-to-day business operations there.

Makinde directed employment practices and has directly or indirectly acted in the interest of Lifeline in relation to its employees at all relevant times herein, including determining compensation policies that applied to employees. Makinde resides at 8909 Harvest Square Ct. Potomac, Maryland. Therefore, she is a resident of Maryland within the jurisdiction of this Court.

Paragraph 3: Denied that Rhoda Makinde "directed employment practices and has directly or indirectly acted in the interests of Lifeline in relation to its employees at all relevant times herein, including compensation policies that applied to employees." Makinde did not make Lifeline's hiring decisions. At disloyal subordinate, Jerrell Saddler, did. He abused his position by disregarding a Lifeline policy prohibiting employees from working more than 40 hours in any week. Mr. Saddler was seeking to sabotage Lifeline, Inc. financially because he was simultaneously working with a Lifeline competitor, Aging in Motion. The remainder of paragraph 3 is admitted.

4. The business activities of Defendants, as described herein, are and were related and performed through unified operation or common control for a common business purpose and constitute an enterprise within the meaning of Section 3(r) of the Act.

Paragraph 4: Admitted.

5. Defendants employ persons in domestic service for profit, which affects commerce per Section 2(a)(5) of the Act, 29 U.S.C § 202(a)(5). Lifeline also employs individuals who are engaged in transportation, communication, and/or transmission of information between the State of Maryland and the District of Columbia. The enterprise has had an annual gross volume of sales made or business done in an amount not less than $500,000.00. Therefore, the employees of Defendants are employed in an enterprise

engaged in commerce within the meaning of Section 3(s)(1)(A) of the Act, 29 U.S.C § 203(s)(1)(A).

Paragraph 5: Admitted.

6. The home health aides that Defendants employ are engaged in "domestic service" as defined in 29 C.F.R. § 552.3 because they engage in "services of a household nature" performed "in or about a private home." Therefore, these employees are covered by Section 2(a) of the Act and as defined in 29 C.F.R. § 552.3.

Paragraph 6: Admitted.

7. Defendants willfully violated the provisions of Sections 7 and 15(a)(2) of the Act by employing their employees in an enterprise engaged in commerce or handling goods or materials that have been moved in or produced for commerce for workweeks longer that those prescribed in Section 7 of the Act without compensating said employees for employment in excess of the prescribed hours at rates not less than one and one-half times their regular rates. Therefore, Defendants are liable for the payment of unpaid overtime compensation and an equal number of liquidated damages under Section 16(c) of the Act.

Paragraph 7: Denied. Plaintiff's alleged overtime hours of Lifeline's employees are based on false and fraudulent payroll entries prepared by Francis Awoyera & Associates, PC (FAA) who was working for a Lifeline competitor when it provided QuickBooks payroll information to Plaintiff. FAA committed perjury during a July 2, 2024, deposition (Transcript p.62) in the D.C. Superior Court case of *Lifeline, Inc. v. Francis Awoyera & Associates,* Case No. 2023-CAB-004205, in denying it had access to Lifeline's QuickBooks payroll information to conceal its

fraud. FAA is working with a Lifeline competitor, which created an incentive to defraud Lifeline.

8. For example, during the time period from at least March 16, 2021 through at least April 15, 2024, Defendants failed to compensate their employees employed as home health aides at rates not less than one and one-half times their regular rates when they worked over 40 hours in a workweek. During this time period, these employees worked at least one hour in excess of forty per workweek. Some of Defendants' employees often worked, for example, as many as 96 hours in any given workweek. During the vast majority of workweeks from at least March 16, 2021 through at least April 15, 2024, Defendants paid these employees their straight-time hourly rates (for example, $18.15 per hour) for all hours worked, often on the face of Defendants' payroll records, and did not pay the required time and one-half premium rate for overtime hours worked in excess of forty per workweek.

Paragraph 8: Denied. Lifeline's written policy acknowledged in writing by its employees prohibited overtime work. The false numbers alleged by Plaintiff are based on fraudulent information supplied to Plaintiff by FAA, Jerrell Saddler, and others who are employed by Lifeline's competitors.

9. Defendants knew or recklessly disregarded their obligation to pay their employees one and one-half their regular rates for hours worked in excess of forty per workweek. For example, Defendants were aware that home care workers employed by third-party agencies were entitled to overtime. Nonetheless, Defendants simply paid employees straight time for overtime hours worked and required at least some employees to sign a form in which they acknowledged that Lifeline would not pay for overtime.

Paragraph 9: Denied. Plaintiff's allegations are based on fraudulent information supplied to Plaintiff by FAA, Jerrell Saddler, and others who are employed by Lifeline's competitors.

10. Defendants also sought to avoid paying overtime wages to employees, therefore willfully violating the FLSA, by hiring individuals who had emigrated from Africa because they believed they were likely to be financially dependent on their job and, as a result, less likely to file a complaint with the U.S. Department of Labor regarding their unlawful pay practices.

Paragraph 10: Denied.

11. Until approximately 2016, Defendants also sought to avoid paying overtime wages to employees by paying employees as W-2 employees for the first 40 hours of work in a given workweek and then, for all hours worked over 40 hours, paying those employees regular rates of pay as 1099 employees to avoid paying overtime rates.

Paragraph 11: Denied.

12. Defendants were advised by management level employees that they were required to pay employees overtime rates for overtime hours worked and that their pay practices were unlawful under the FLSA but Defendants opted to ignore that advice.

Paragraph 12: Denied.

13. Defendants violated the provisions of Sections 11(c) and 15(a)(5) of the Act in that Defendants failed to make, keep, and preserve adequate and accurate records of their employees, which they maintained as prescribed by the regulations issued and found at 29 C.F.R. Part 516.

Paragraph 13: Denied. FAA was responsible for maintaining Lifeline's payroll records but has fraudulently withheld them from Defendant and has created fictitious payroll entries to sabotage Lifeline's operations to assist a competitor for whom FAA works.

14. For example, due to their practice of paying employees their straight time hourly rates for all hours worked, Defendants failed to keep and preserve payroll records for employees as required for at least three years, including accurate records of employees' total weekly straight- time earnings and total weekly overtime premium pay. 29 C.F.R. §§ 516.2(a), 516.5(a).

Paragraph 14: Denied.

15. Defendants violated the provisions of Section 15(a)(3) of the FLSA, 29 U.S.C. §215(a)(3), by retaliating against, intimidating, and otherwise coercing employees in an effort to obstruct an ongoing investigation by the Acting Secretary of Labor.

Paragraph 15: Denied.

16. On March 18, 2024, Wage and Hour Investigator ("WHI") Monica Marin notified Defendants of an open Fair Labor Standards Act investigation when she sent an appointment letter to Defendants that included an FLSA Handy Reference Guide, Fact Sheet #21 – Record Keeping, Fact Sheet #44 – Visit to Employer, and Fact Sheet # 77A – Prohibit Retaliation.

Paragraph 16: Admitted.

17. Each document that WHI Marin attached told Defendants that retaliation was prohibited under the FLSA and further requested payroll and time records, including time cards and corresponding paychecks.

Paragraph 17: Admitted.

18. Subsequently, in or about March 2024, it was observed by various employees that Defendant Rhoda Makinde began searching through individual employee work email accounts for all office employees to ascertain whether employees had been communicating with the U.S. Department of Labor. Defendant Rhoda Makinde further locked employees out of their email accounts and reassigned new passwords to employees to ensure Defendants had access to all employee email communications. Prior to learning of the U.S. Department of Labor investigation, Defendants had never undertaken such actions.

Paragraph 18: Denied. Defendant discovered that Lifeline employees were using their Lifeline email accounts to conduct work for Lifeline's competitors or for private matters and thus defraud Lifeline. To end this employee fraud, Lifeline reassigned new passwords for its employees enabling monitoring of their Lifeline email accounts to prevent illegal diversion to assist Lifeline's competitors. The reassignment of passwords had nothing to do with Plaintiff's investigation.

19. On or about April 8, 2024, Defendant Rhoda Makinde directed administrative staff employees to falsify payroll records to interfere with the U.S. Department of Labor's investigation into Defendants' pay practices.

Paragraph 19: Denied.

20. Subsequently, Defendant Rhoda Makinde caused to be transmitted to the U.S. Department of Labor falsified payroll records that did not reflect all hours worked by certain employees and to hide their practice of not paying overtime rates for overtime hours worked.

Paragraph 20: Denied. Lifeline transmitted all relevant documents in its possession, custody, or control. Lifeline attempted to retrieve payroll records from its accountant FAA, but FAA committed perjury in a deposition denying it had access to them.

21. Commencing in or about June 2024 and continuing to present, Defendant Rhoda Makinde began terminating or constructively terminating the employment of employees she suspected of having cooperated with the U.S. Department of Labor investigation or having communicated with individuals Defendant Rhoda Makinde suspected of having cooperated with the U.S. Department of Labor investigation. Defendant Rhoda Makinde would constructively terminate the employment of those employees by significantly reducing their work hours or removing them indefinitely from their client assignments.

Paragraph 21: Denied. To the extent work hours were reduced, the reduction was caused by a loss of clients-a bona fide business decision. In other cases, the client expressed dissatisfaction with the employee's behavior and requested a substitute, which Lifeline granted.

22. By engaging in the conduct set forth above, Defendants violated section 15(a)(3) of the Act, by hindering and obstructing employees from engaging, or preparing to engage, in activity that is protected by the Act, specifically participating in an investigation conducted by the Acting Secretary through her agents the WHD investigators.

Paragraph 22: Denied.

23. As a result of Defendants' actions, a reasonable employee would be dissuaded from engaging in activities protected under the Act, such as cooperating with an investigation by the Acting Secretary into violations of the FLSA.

Paragraph 23: Denied.

24. Through their actions described above, Defendants have also violated Section 11(a) of the FLSA, 29 U.S.C. § 211(a) by interfering with the Acting Secretary's investigation regarding Defendants' compliance (or lack thereof) with the FLSA. Defendants obstructed and hindered the

employees' ability to participate in the protected activity of participating in WHD investigation by being interviewed by a WHD investigator.

Paragraph 24: Denied.

Prayer for Relief: Plaintiff is not entitled to any of the relief requested in the Amended Complaint.

Respectfully submitted,

*/s/Bruce Fein*
Bruce Fein
Law Offices of Bruce Fein
300 New Jersey Avenue, N.W., Suite 300
Washington, D.C. 20001
Phone: 202-465-8728
Email: bruce@feinpoints.com
Counsel for Defendants *pro hac vices*

CERTIFICATE OF SERFVICE

I hereby certify that service of the foregoing has been made on all parties of record via this Court's CM/ECF electronic filing system this 10th day of February 2025.

*/s/Bruce Fein*
Bruce Fein